**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| **MAUREEN FASTIE** | ) |
| 924 Rock Spring Road | ) |
| Bel Air, MD 21014 | ) |
| | ) |
| Plaintiff, | )   **COMPLAINT AND REQUEST** |
| | )   **FOR TRIAL BY JURY** |
| v. | )   Case Number  8:23-cv-1124 |
| | ) |
| **WBCM LLC** | ) |
| 300 East Joppa Road, Suite 200 | ) |
| Baltimore, MD 21286 | ) |
| | ) |
| **SERVE:** | ) |
|     REGISTERED AGENTS INC. | ) |
|     5000 THAYER CENTER SUITE C | ) |
|     OAKLAND, MD 21550 | ) |
| | ) |
| Defendant. | ) |

_____)

**COMPLAINT AND REQUEST FOR TRIAL BY JURY**

1. This is an action by Plaintiff Maureen Fastie against Defendant WBCM LLC d/b/a/WHITNEY BAILEY COX & MAGNANI ("WBCM") for declaratory, monetary, and injunctive relief for injuries suffered by Plaintiff as a result of Defendant WBCM's in treating Plaintiff less favorably, and ultimately terminating her employment, due to her sex and in retaliating against her for engaging in protected EEO activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII")

1

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the matter in controversy arises under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), (b) and (c), as a substantial part of the events or omissions giving rise to the claim occurred in Maryland and as Defendant WBCM is subject to this Court's personal jurisdiction with respect to the civil action in question.

**ADMINISTRATIVE PREREQUISITES**

3. On January 14, 2021, Plaintiff Fastie filed Charge of Discrimination Number 531-2021-00256 (the "Charge") with the U.S. Equal Employment Opportunity Commission.

4. On March 3, 2023, the EEOC issued Plaintiff her Notice of Right to Sue.

**PARTIES**

5. Plaintiff Fastie was at all relevant times an adult resident of Harford County and of Baltimore County, Maryland.  She was employed by WBCM from May 2016 until WBCM terminated her on September 9, 2020.

6. Defendant WBCM is a limited liability company formed under the laws of Maryland, is an active LLC in good standing in the State of Maryland, and was, at all relevant times, Plaintiff Fastie's employer as that term is defined by 42 U.S.C. § 2000e(b).

**FACTUAL ALLEGATIONS**

7.  Plaintiff Fastie joined WBCM in October 2015 as a Human Resources Assistant "temp to perm" contractor via Aerotek.  She reported to Mayo Lucas, Vice President of Human Resources.

8.   In May 2016, WBCM converted her to a WBCM employee and updated her title to Human Resources Assistant and Recruiting Coordinator.

9.  In November 2017, WBCM promoted her to Human Resources Manager, where she was the sole HR employee and was responsible for all HR activity. She reported to Leon Kriebel, then-President of WBCM.

10. In September 2018, WBCM promoted her to Director, Human Resources.  She began reporting to Marco Legaluppi, President of WBCM, in January 2019 upon Mr. Kriebel's retirement.  Since then, she had six (6) employees transfer to the Human Resources Department and had supervised them all successfully.  She was a high performing employee and had never been the subject of disciplinary action.

11. Under Mr. Legaluppi's leadership, Plaintiff Fastie was subjected to sexism that culminated in her unlawful and discriminatory termination on September 9, 2020.

12. In numerous ways that significantly affected the terms and conditions of Plaintiff Fastie's employment, WBCM treated Plaintiff Fastie differently than her male coworkers.

13. For example, no male directors were required to leave during the monthly management meetings, but Plaintiff Fastie was.

3

14. No male directors were ordered to provide full access to their Outlook calendars to WBCM or its leaders, but Plaintiff Fastie was.

15. No male directors or their departments were subject to a third-party assessment, but Plaintiff Fastie was.

16. No male directors were required to return to the office while the COVID-19 stay at home order was in effect, but Plaintiff Fastie was.

17. No staff members of male directors were required to return to the office while the COVID-19 stay at home order was in effect, but Plaintiff Fastie's were.

18. No male directors were excluded from their department's annual salary increase discussions, but Plaintiff Fastie was.

19. No male directors were restricted from working with their significant other, but Plaintiff Fastie was.

20. Specific examples of less favorable treatment based on sex abound.  For example, on January 10, 2020, Mr. Legaluppi asked Plaintiff Fastie to meet with him in his office and told her she was not allowed to work with Tom Prosser because of her personal relationship with Mr. Prosser.  Mr. Legaluppi did not approach Mr. Prosser about this issue.  Further, there is no policy at WBCM regarding interoffice relationships.  Further, Mr. Legaluppi did not exclude himself from working with Kellie Reardon, despite his very apparent personal relationship with her.

21. On January 10, 2020, Mr. Legaluppi told Plaintiff Fastie that she could no longer stay for the financial discussion portion of the monthly management meeting, which completely shocked

4

Plaintiff Fastie.  When Mr. Legaluppi instructed her to leave the meeting, she said words to the effect that Mr. Legaluppi had already been over this issue in November 2017, and everyone had agreed that she could stay for that portion of the monthly management meeting.  Mr. Legaluppi stated that the financials do not relate to her job, and Plaintiff Fastie disagreed.  She said that she was not comfortable leaving a meeting that other women, i.e., Kellie Reardon and Callie Geller, who are both Directors in the Marketing Department, had been told to leave, to which she had been invited, and in which she had participated.  Without any factual basis, Mr. Legaluppi said that she should not have access to individual departments' financial information because she may show favoritism towards departments that were doing well.  When she asked if he had an example, he did not.

22. At Mr. Legaluppi's request, Plaintiff Fastie provided reasons why she should be included in the financial portion of the management meeting.  She explained that the strategic aspect of her role, and knowing the finances, helped her better understand the health of the organization. Mr. Legaluppi still said no but told her she could request the information after the meeting and that he would decide if she could have it.

23. Plaintiff Fastie stated that she was uncomfortable leaving the meeting because she felt women were being targeted.  At the time of Plaintiff Fastie's employment, about 20 to 25 men and four (4) women attended the monthly meeting. Three (3) women, including Plaintiff Fastie, were required to leave the meeting.  Not a single male was required to leave.

24. Mr. Legaluppi did not require Jason Platts, the male IT Director, to leave the financial discussion portion of the monthly management meeting.  When Plaintiff Fastie asked Mr.

Legaluppi about this and pointed out that his involvement in the financials was the same as hers, he stated, "He needs to run the Skype meeting." Subsequent to that meeting, Mr. Platts still received financial reports, and his attendance during the financial discussions was never questioned.

25. Mr. Legaluppi repeatedly demanded access to Plaintiff Fastie's calendar (which she told him contained work **and** personal appointments) but he did not request such access to Mr. Platts' calendar.

26. On March 10, 2020, Plaintiff Fastie sent an email to the WBCM partners warning them about COVID-19. During a meeting with the partners on or about March 12, 2020, Plaintiff Fastie raised the issue of employees working from home. Executive Vice President Mark Shafer said, "Back in the day when something like this happened, my wife stayed home with the kids." Plaintiff Fastie quickly asked when there was a pandemic like this in his lifetime, and Mr. Shafer told her to leave the meeting.

27. Mr. Legaluppi demanded that Plaintiff Fastie and her staff, as well as numerous other female employees, work in the office during the pandemic. On May 14, 2020, Mr. Legaluppi told Plaintiff Fastie that her staff members who had been working from home (i.e., Michelle Wheatley, Zoe Renfro and Max Dornon) had to return or they would be fired. When Plaintiff Fastie asked for flexibility because she knew Ms. Renfro would have a problem with that demand, Mr. Legaluppi became angry and viciously degraded Ms. Renfro. Despite the fact that the office was still "closed", Mr. Legaluppi was very angry at the employees who were working from home.

6

28. On August 14, 2020, Plaintiff Fastie met with Mike Baker, President - WBCM Construction Services and Jesse Lindsey, Executive Vice President, to raise her concerns of sex discrimination.  She explained what happened on January 10, 2020 and how she was told of WBCM's decision that she and Mr. Prosser could not work together because of their relationship. Then she told them that Mr. Legaluppi, on the other hand, had been seen at Ms. Reardon's house on several occasions during the workday – despite the fact that Mr. Legaluppi and Ms. Reardon work together.  Plaintiff Fastie advised that she had photos and video that could prove this **in case they did not believe her.**  She then explained that she felt Mr. Legaluppi manipulated people by spreading lies and targeting anyone who disagreed with him or who may threaten him.  She advised that if things did not improve, she would have to quit and talk to a lawyer, because this was not right.

29. During that meeting, Plaintiff Fastie also explained how Mr. Platts was treated differently than she was and that they both report to Mr. Legaluppi.

30. Just over two weeks after Plaintiff Fastie made her allegations of sex discrimination and engaged in protected EEO activity, WBCM terminated her employment.

31. On September 3, 2020, Plaintiff Fastie and Ms. Wheatley received an invitation to go to Fortress HR in Millersville, Maryland on September 9, 2020 to review the results of the Human Resources assessment.  Shortly after Plaintiff Fastie arrived, Susan Manno of Fortress HR ushered Plaintiff Fastie into a conference room, and told her she was being terminated for gross misconduct – specifically, for her "involvement with Tom Prosser" and for "stalking and threatening to expose one of the partners, which is extortion."  She said the partners were

generously offering a confidential separation agreement and two weeks pay.  She said that if

Plaintiff Fastie did not sign the agreement, the partners would press criminal charges.   All of

Defendant's partners – specifically, Mr. Legaluppi, Mr. Shafer, Mr. Lindsay, Mr. O'Neill, and

Mr. Baker – were present when Plaintiff was terminated.

32. The September 9, 2020 termination letter to Plaintiff Fastie, which Mr. Legaluppi signed and

which Ms. Manno sent, falsely accused Plaintiff Fastie of threatening "blackmail" and of

criminal extortion.  The termination letter stated that she was being terminated for Gross

Misconduct, and for "Stalking/Harassment under the State of Maryland Code 3, Subtitle 8"

and "Extortion under State of Maryland Code 3-705".  The letter stated in its entirety:



September 9, 2020

Maureen Faustie
Towson, Maryland

Dear Maureen,

This letter will serve to confirm that your employment with WBCM has been terminated effective September 9, 2020.  The reason for the termination is "Gross Misconduct."

The determination for immediate separation from WBCM for Gross Misconduct is more specifically defined as follows:

**Stalking/Harassment under the *State of Maryland Code 3, Subtitle 8*:**

After conducting a thorough investigation through a third party, the findings of Gross Misconduct are as follows:

> In your capacity as the Human Resource Director of WBCM, you conspired with a former employee, Thomas Prosser to stalk a Principle of WBCM to capture photographs to leverage the threat of "blackmail".

> 1. During business hours and on several occasions, Mr. Prosser followed the Principle of WBCM. On one occasion, the Principle recognized Mr.Prosser in a white Toyota Tacoma pick-up truck, License plate number 5CP2782. A photograph was captured by the Principle.

> 2. On August 14, 2020, while the Principle in question was on Holiday, you scheduled a meeting with WBCM Partners, Mike Baker and Jesse Lindsay.  By your own verbal admittance, you leveraged a threat of "blackmail" to the Partners and namely the Principle of WBCM. You admitted to possessing photographs of the Principle that would compromise the Principle's position at WBCM.

> The events leading to that August 14th meeting came by way of a request by the Partners to contract a third party HR company to conduct an HR Audit of your department.  You made your threats clear in that, if you were being fired that you would expose the Principle by distributing the photographs and details of the Principle's travelled locations with the intent to inflict emotional distress, damage his reputation and cause economic damage to WBCM.  This act constitutes the charge of "Extortion" under *State of Maryland Code 3-705*.

Your final paycheck will be provided to you on Friday, September 11, 2020 and will include wages through September 9, 2020 as well as any unused, accrued vacation hours.

300 East Joppa Road  Suite 200  |  Baltimore, MD 21286  |  410.512.4500
www.wbcm.com



Your health insurance benefits will continue through September 30, 2020.  Your rights to continue coverage under COBRA will be provided to you by mail from our plan administrator.

Any company property in your possession must be sent back to WBCM by Friday, September 22, 2020.

Should you have further questions, please contact me directly at 410-512-4578 or Susan Manno of FortressHR at 410-490-6227.

Sincerely,

Marco Legaluppi
President

33. By emails dated September 9 and 12, 2020, Plaintiff Fastie was pressured to sign an unconventional "Resignation Agreement".  WBCM threatened that if she did not sign, it would pursue the revocation of her SHRM-SCP certification and press criminal charges.

34. Defendant was well aware that Plaintiff Fastie in no way threatened blackmail and **never** asked for anything in exchange for not exposing Mr. Legaluppi's relationship with Ms. Reardon. Indeed, as far back as June 4, 2020, Mr. Legaluppi was aware that Mr. Prosser  - not Plaintiff Fastie - had witnessed him, several times, leaving Ms. Reardon's home during the workday.  Mr. Legaluppi almost rear-ended Mr. Prosser when Mr. Legaluppi chased him by car while driving away after he realized that Mr. Prosser had seen Mr. Legaluppi coming out of Ms. Reardon's home.  Mr. Legaluppi, Mr. Prosser and Plaintiff Fastie discussed this at the time it happened.  Mr. Legaluppi repeatedly asked Mr. Prosser if he was going to "expose" him.

35. In December 2020, WBCM hired a Keith Karas (male) to replace Plaintiff Fastie as Director of Human Resources.  Mr. Karas is now a Vice President.

**COUNT I**
**SEX DISCRIMINATION – HOSTILE WORK ENVIRONMENT**

36. Paragraphs 1 through 35 are incorporated by reference herein as if fully set forth herein.

37. Defendant has engaged in a course of severe, pervasive, unlawful and discriminatory conduct against Plaintiff based on her sex and created a hostile work environment based on sex.

10

38.     The unlawful employment practices complained of herein were intentional.

39.     The effect of discriminating against Plaintiff on the basis of her sex has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect the terms and conditions of her employment status because of her sex.

40.     Defendant's actions described herein constituted violations of Title VII.

41.     As a direct and proximate result of Defendant WBCM's discrimination, Plaintiff Fastie has sustained, and continues to sustain, direct and consequential damages, including, but not limited to, loss of sleep, emotional pain, mental anguish, humiliation and embarrassment, loss of employment opportunities, damage to her professional reputation and development, loss of income and other economic benefits, job search costs, loss of future employment opportunities, and the impairment of future earning capacity, justifying an award of back pay, front pay, as well as compensatory and punitive damages, the amount to be determined by a jury at trial.

**COUNT II**
**SEX DISCRIMINATION – ADVERSE EMPLOYMENT ACTION**

42.     Paragraphs 1 through 41 are incorporated by reference herein as if fully set forth herein.

43.     Defendant has engaged in unlawful and discriminatory conduct against Plaintiff based on her sex by terminating her employment.

44.     The unlawful employment practices complained of herein were intentional.

45. The effect of discriminating against Plaintiff on the basis of her sex has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect the terms and conditions of her employment status because of her sex.

46. Defendant's actions described herein constituted violations of Title VII.

47. As a direct and proximate result of Defendant WBCM's discrimination, Plaintiff Fastie has sustained, and continues to sustain, direct and consequential damages, including, but not limited to, loss of sleep, emotional pain, mental anguish, humiliation and embarrassment, loss of employment opportunities, damage to her professional reputation and development, loss of income and other economic benefits, job search costs, loss of future employment opportunities, and the impairment of future earning capacity, justifying an award of back pay, front pay, as well as compensatory and punitive damages, the amount to be determined by a jury at trial.

**COUNT III**
**RETALIATION**

48. Paragraphs 1 through 47 are incorporated by reference herein as if fully set forth herein.

49. Plaintiff's internal EEO complaints was made to oppose WCBM's unlawful discriminatory practices.

50. After Plaintiff complained of sex discrimination, WCBM engaged in unlawful, intentional, willful and reckless retaliatory behavior toward her, in violation of Title VII, in terminating her and in its treatment of her during the termination process, including but not limited to threatening her with criminal charges for allegedly violating Maryland's criminal code.

12

51.     Defendant's actions described herein constituted violations of Title VII.

52.     As a direct and proximate result of Defendant WBCM's retaliation, Plaintiff Fastie has

sustained, and continues to sustain, direct and consequential damages, including, but not

limited to, loss of sleep, emotional pain, mental anguish, humiliation and embarrassment,

loss of employment opportunities, damage to her professional reputation and

development, loss of income and other economic benefits, job search costs, loss of future

employment opportunities, and the impairment of future earning capacity, justifying an

award of back pay, front pay, as well as compensatory and punitive damages, the amount

to be determined by a jury at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment against Defendant and requests that the Court:

a.      Enter an order declaring that the acts and practices complained of herein are in

violation of federal law and enjoining and permanently restraining these

violations;

b.      Enter declaratory and final judgment in favor of Plaintiff and against Defendant on

each of Plaintiffs' claims;

c.      Enter an order that Defendant pay Plaintiff back pay, front pay, and benefits;

d.      Enter an order that Defendant pay Plaintiff compensatory damages in the amount

of $200,000.00;

e.      Enter an order that Defendant pay Plaintiff punitive damages in the amount of

$200,000.00;

13

f.      Enter an order awarding prejudgment interest on amounts owed to Plaintiff;

g.      Enter an order awarding Plaintiffs their attorneys' fees and costs of this action; and

h.      Enter an order awarding such other and further relief as may be appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues.

Respectfully submitted,

**THE SELTZER LAW FIRM**

s/ Diane A. Seltzer
Diane A. Seltzer, Esquire
MD Bar No. 22855
4800 Hampden Lane, Suite 200
Bethesda, MD  20814
301-500-1555
dseltzer@seltzerlawfirm.com
Attorneys for Plaintiff Maureen Fastie

Date:  April 27, 2023